**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jalen Robbins, *et al.*, | No. CV-22-00298-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Circle K Stores Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendant Circle K Stores, Inc.'s Motion for Summary Judgment (Doc. 33, MSJ), to which Plaintiffs Jalen Robbins, Luranna Perez, and Twyla Jones filed a Response (Doc. 39, Resp.) and Defendant filed a Reply (Doc. 41). The Court held oral argument on the Motion on June 29, 2023. (Doc. 44; 06/29/2023 Hr'g Tr.)

**I.   BACKGROUND**

Sometime between 2:00 and 3:00 a.m. on July 3, 2020, Robert Blackwater entered a Circle K store in Scottsdale, Arizona (the "Store") armed with a loaded assault rifle and ordered the Store clerk to hand over cash. Joseph Toki, a customer, entered the Store while Blackwater was robbing it, and Blackwater shot and killed him. As Blackwater left the Store, Plaintiff Jalen Robbins, who was seated in a car in the parking lot, pulled out a gun and Blackwater and Robbins exchanged gunfire. Blackwater collapsed as he tried to return to a waiting vehicle and died from his wounds. Robbins sustained injuries but survived.

In addition to Robbins, Plaintiffs in this action are Toki's beneficiaries: his partner, Twyla Jones, for and on behalf of their three minor children, and his mother, Luranna

1 Perez. Plaintiffs bring a claim of negligence against Circle K, claiming it breached its duty to keep the Store reasonably safe. Among other evidence, Plaintiffs support their claim by records showing Blackwater had committed armed robbery at two other Circle K stores in the area the same night, the Store had a record of at least four armed robberies in the preceding three years, and the Scottsdale Police had been summoned to the Store multiple times each month. Circle K now moves for summary judgment on Plaintiffs' claim.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

### III.   ANALYSIS

#### A.   Duty

In their briefs, the parties dispute whether the principal question before the Court in this case is, as Defendant argues, simply whether a duty exists—a question of law—or, as Plaintiffs argue, whether there is sufficient evidence from which a reasonable jury can determine that the applicable standard of care was breached. Under Arizona law, "a negligence action may be maintained only if there is a duty or obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 366 (Ariz. 1985). "The issue of duty is usually one for the court as a matter of law." *Id.* In determining whether there is a duty, courts must not "equate the concept of duty with specific details of conduct." *Id.* at 367. For example, in *Markowitz*, the Arizona Supreme Court stated that the question of duty was not whether the state of Arizona had "a duty to place warning signs at every hundred paces along the forty-five mile shoreline," but rather "whether the state as a possessor of land is under *any* duty of care with respect to the safety of those it has invited to use the particular parcel of land." *Id.*

Put another way, that Court taught that "it is 'better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other.'" *Id.* (quoting W. Prosser and W. Keeton, The Law of Torts, § 53 at 356 (5th ed. 1984)). But, contrary to Defendant's argument, "the existence of a duty is not to be confused with details of the standard of conduct," such as whether the state has a duty to post warning or traffic signs or fix potholes. *Id.* The question of duty is simply "whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Id.* at 368.

Thus, the question of duty before the Court is not whether Defendant "had a duty to prevent the violent criminal attack," as framed by Defendant, but rather whether Defendant had a duty to its invitees to avoid or prevent injury to them. The answer in this context is straightforward. Under section 344 of the Restatement of Torts ("Restatement"), which Arizona follows,

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons.

No genuine dispute exists that Toki and Robbins were at Defendant's place of business—the Store—as customers and invitees and were harmed by Blackwater's intentionally harmful acts.[1] As a matter of law, Defendant had a duty to avoid or prevent injury to its customers, Toki and Robbins, caused by the intentionally harmful acts of third persons such as Blackwater.

**B.    Negligence: Evidence of Breach of the Standard of Care**

The crux of the matter here is, as Plaintiff correctly frames it, whether Plaintiff has produced sufficient evidence from which a reasonable jury could conclude that

---

[1] Defendant argues that, once Robbins pulled his gun to use in self-defense, he became a trespasser (MSJ at 10-11), but that contention is unsupported by the legal authority Defendant cites. In this instance, Defendant proffers no evidence that Robbins did not conduct himself as an invitee when Blackwater shot and killed Toki seconds before exiting the Store. Rather, a factfinder may consider whether Robbins's acts in self-defense constituted contributory negligence. *See Markowitz*, 706 P.2d at 371.

- 4 -

Defendant's actions or inactions breached the applicable standard of care—"an issue of fact that turns on the specifics of the individual case," *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). Once a duty is established, a defendant must conform to a standard of care that is reasonable under the circumstances "in light of the known and foreseeable risks." *Markowitz*, 706 P.2d at 368–69; *see also Gipson*, 150 P.3d at 231 (holding that "foreseeability often determines whether a defendant acted reasonably under the circumstances or proximately caused injury to a particular plaintiff" and is thus "more properly applied to the factual determinations of breach and causation than to the legal determination of duty"). "[W]here reasonable people could differ as to whether the danger of some injury is foreseeable, the question of negligence is one of fact for a jury to decide." *Id.* at 369–70. "Sometimes, of course, it may be possible to say as a matter of law that particular conduct was or was not negligence," not because the defendant was not under a duty to keep the plaintiff safe, but "because reasonable people would all agree that the [defendant] had fulfilled its duty to act with reasonable care." *Id.* at 369.

Accordingly, whether Defendant here fulfilled its duty to act with reasonable care hinges on whether the danger that invitees would be injured by third persons robbing the Store was known and foreseeable. *See Simon v. Safeway, Inc.*, 173 P.3d 1031, 1037–38 (Ariz. Ct. App. 2007) (citing *Martinez v. Woodmar IV Condos. Homeowners Ass'n, Inc.*, 941 P.2d 218, 219–20 (Ariz. 1997); *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1044–45 (Ariz. 1990)) (stating that the duty of care to business invitees to maintain the safety of common areas encompasses not only physical conditions but also dangerous activities). With regard to foreseeability, Plaintiffs proffer evidence from Jeff Gentry, an expert in threat assessment and management, that convenience stores such as the Store, which operate 24 hours a day, are at "high risk" for armed robberies and that Defendant's training of its employees as to actions they should take during and after an armed robbery do not meet industry standards. (Doc. 38, Pls.' Controverting Statement of Facts ("CSOF") ¶¶ 1–3; Ex. 1, Gentry Aff. & Report ¶¶ 3–5.) Plaintiffs also point to evidence that the incident at the Store giving rise to Plaintiffs' claims was Blackwater's third robbery and

shooting at Defendant's stores that night (within a three-hour period), and although the three stores were located in relatively close proximity, there is no record that Defendant's employees attempted to contact supervisors or warn neighboring stores. (CSOF ¶¶ 7–9; Gentry Aff. & Report ¶¶ 8–10.) Plaintiffs' evidence also shows that four armed robberies had occurred at the Store in the three years prior to the incident in question and that Scottsdale police have been summoned to the Store multiple times each month. (CSOF ¶¶ 15–16 & Exs. 4, 6; Gentry Aff. & Report ¶ 12.)

In its briefing, Defendant states that "there is no evidence that Circle K voluntarily assumed a duty to protect Plaintiffs from criminal attacks by armed robbers on the premises." (MSJ at 11.) Here again, Defendant improperly conflates duty with whether conduct constitutes a breach of the standard of care. *See Martinez*, 941 P.2d at 211 ("[W]e disapprove of attempts to equate the concepts of duty with specific details of conduct." (citing *Markowitz*, 706 P.2d at 367)). As the Court stated *infra*, there is no question that, under the Restatement, a business owner has a duty to provide reasonable protection to invitees from intentional harmful acts by third persons. That duty does not disappear when a business chooses not to employ a security guard.

In arguing that by not "voluntarily assum[ing] a duty to provide security services at the Store," Defendant did not have "a duty to protect Plaintiff against the violent criminal attacks" (MSJ at 11–12), Defendant relies on language it plucked from *Simon*, 173 P.3d at 1040. But there, the Arizona Court of Appeals was addressing whether Safeway could be held liable for the alleged physical and sexual assault of a customer *by* the security guard Safeway hired as an independent contractor. *Id.* at 1033. That court stated that Safeway "did not initially have a specific, nondelegable duty to provide security services"—the language to which Defendant in the present case refers. *Id.* at 1040. But the court made that statement only in the context of whether, "[h]aving assumed the task of providing security services on the premises, Safeway . . . created for itself a personal, nondelegable duty to protect its invites from the intentionally tortious conduct *of those with whom it had contracted to maintain a presence and provide security on the premises*." *Id.* at 1040

- 6 -

(emphasis added). The court did not hold that a business has no duty to protect its customers from harmful conduct of third persons if it does not employ security services at the store, as Defendant argues (MSJ at 11–12).

Two Arizona appellate court decisions are instructive here. First, in *Cotterhill v. Bafile*, the Arizona Court of Appeals concluded that a reasonable jury could infer negligence on the part of a bar owner for taking no action to prevent an attack by regular bar patrons causing serious injuries to another bar patron, where the "tension between the two groups . . . existed for ten to fifteen minutes." 865 P.2d 120, 121–22 (Ariz. Ct. App. 1993). The plaintiff "need only present facts from which negligence can reasonably be inferred," and "[a] reasonable jury could have inferred that the probability of a fight was evident for several minutes before it occurred, and that the bartender neglected to take reasonable action to avert violence," such as "ask anyone to leave, threaten to call the police or call the police." *Id.* at 122.

Second, in *Martinez*, the Arizona Supreme Court examined whether the plaintiff—the guest of a tenant of a condominium unit owner—produced sufficient evidence from which a reasonable jury could find a condominium homeowners association negligent for injuries the guest sustained after "local ruffians" shot him in the back in the parking lot of the condominium complex. 941 P.2d at 219, 223–24. The Court stated, in relevant part:

> The trial judge should grant summary judgment if the facts supporting the negligence claim or defense have so little probative value, given the quantum required, that reasonable people could not disagree with the conclusion advanced by the proponent of the claim or defense. Foreseeability of harm defines and limits the scope of conduct necessary to fulfill a land possessor's duty to act reasonably to protect tenants and their guests from criminal attacks. If the possibility of some injury from Defendant's acts or omissions was not foreseeable, Defendant was not negligent, and the trial judge properly granted summary judgment. . . .
>
> [T]here is evidence presented that Defendant knew of the incursion by gangs in the parking lot and other common areas of the property, knew the gangs engaged in drug dealing and other criminal activity, was warned by its own security guard of the need for 24-hour patrols, had hired a second guard for a short period but terminated him because of expense considerations, and knew a neighboring condominium complex had hired

off-duty Phoenix police officers to patrol. We therefore hold there is sufficient evidence from which a jury could find the danger foreseeable and Defendant negligent.

On this record, also, we cannot say as a matter of law Defendant could not have taken reasonable measures that probably would have prevented the attack. It may be that increased security patrols, better fencing, calls for police control, or other measures might have prevented injury. This question of causation in fact is, of course, one especially for the jury.

*Id.* at 223–24 (internal quotations and citations omitted).

Under the Arizona case law, the question here is simply whether Plaintiffs have proffered sufficient evidence from which a reasonable jury could find that the shooting of Toki and Robbins at the Store in the early morning of July 3, 2020, was foreseeable and that Defendant could have taken reasonable measures that probably would have prevented the attack.[2] *See Martinez*, 941 P.2d at 223–24; *Cotterhill*, 865 P.2d at 122. With regard to foreseeability, as the Court referred to *infra*, Plaintiff points to evidence that convenience stores are at high risk for violent criminal activity, that this was at least the fifth armed robbery at the Store in three years, that regular criminal activity has occurred at the Store for which the Scottsdale Police have been summoned, and that Blackwater had engaged in the armed robbery of two other of Defendant's stores shortly before he robbed the Store (killing Toki and injuring Robbins in the process) but Defendant's employees took no action to warn supervisors or neighboring stores. (Gentry Aff. & Report.) As the Arizona Supreme Court found in *Martinez*, this Court cannot conclude that Plaintiffs' evidence "has so little probative value, given the quantum required, that reasonable people could not disagree with the conclusion" that Defendant met the standard of care and is not negligent. *Martinez*, 941 P.2d at 223. Put another way, "there is sufficient evidence from which a jury could find the danger foreseeable and Defendant negligent." *Id.* at 224; *see also Circle K*

---

[2] Defendant argues that Blackwater's criminal act was the "intervening/superseding cause of Plaintiffs' injuries and death" (MSJ at 12), but the Court disagrees. As in *Martinez* and *Cotterhill*, Blackwater's violent conduct *was* a type of intentionally harmful act of a third person contemplated by the Restatement in defining the duty of a business owner to protect its invitees. In other words, Blackwater's armed robbery *was* the dangerous condition or activity causing injury to Toki and Robbins, not the superseding cause of those injuries. *See* Restatement § 344; *Martinez*, 941 P.2d at 223-24; *Cotterhill*, 865 P.2d at 122.

- 8 -

*Corp. v. Rosenthal*, 574 P.2d 856, 861 (Ariz. Ct. App. 1977) (in determining whether an armed robbery causing injury to a Circle K store clerk was foreseeable, "evidence of numerous previous robberies at Circle K stores in the Tucson area [and] the testimony of an expert witness regarding security practices and devices available to Circle K at the time but not being used at the store in question" was sufficient for the factfinder to infer that the armed robbery causing injury to the clerk was foreseeable under the circumstances).

Plaintiffs' causation evidence is likewise sufficient to survive summary judgment. As the Arizona Supreme Court found in *Martinez*, a jury could find that reasonable measures identified by Plaintiffs' expert—such as employing a security guard or security services, setting modified hours of operation, and/or implementing a notification system of armed robberies from store to store within Defendant's local network and enabling employees to react to notification by locking the store doors, among other measures (Gentry Aff. & Report)—could probably have prevented the violent attack at the Store, which is generally a question "especially for the jury." *Martinez*, 941 P.2d at 223–24; *see also Circle K Corp.*, 574 P.2d at 861 (concluding the factfinder could infer from the evidence that the store clerk's "injury could have been prevented with reasonable care by additional security measures or the presence of another employee").

For all these reasons, Defendant is not entitled to summary judgment as to Plaintiffs' negligence claim, and this matter will proceed to trial after the close of discovery.

**IT IS THEREFORE ORDERED** denying Defendant Circle K Stores, Inc.'s Motion for Summary Judgment (Doc. 33).

Dated this 31st day of January, 2024.

Honorable John J. Tuchi
United States District Judge